1   WO

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   John Rosseno,                          No. CV-13-00943-TUC-BPV

10                     Plaintiff,           **ORDER**

11         v.

12  Carolyn W. Colvin, Acting Commissioner
    of Social Security,

13                     Defendant.

14         Plaintiff, John Rosseno, filed this action for review of the final decision of the

15  Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Plaintiff presents four

16  issues on appeal: (1) whether the Administrative Law Judge ("ALJ") provided legally

17  sufficient reasons for rejecting the opinion of Plaintiff's treating physician; (2) whether

18  the ALJ erred by relying on the opinion of the non-examining medical records' reviewer;

19  (3) whether the ALJ erred in finding Plaintiff's symptom testimony not credible; and (4)

20  whether the ALJ erred in failing to properly apply the Medical Vocational Rules. (Doc.

21  21.) Before the court is an opening brief filed by Plaintiff (Doc. 21), and Commissioner's

22  memorandum in response (Doc. 28). Plaintiff filed no reply brief.

23         The United States Magistrate Judge presides over this case pursuant to 28 U.S.C. §

24  636 (c) and Fed.R.Civ.P. 73, having received the written consent of both parties. (Doc. 9,

25  11.)

26         The Defendant's decision denying benefits is affirmed.

27

28

## I.   Procedural History

Plaintiff filed applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on July 5, 2007, alleging disability as of June 14, 2007 due to a "[d]eteriorated spine, mass in lungs, [HIV] positive." Transcript/Administrative Record (Tr.) 208-215, 245. The application was denied initially and on reconsideration. Tr. 113-117, 123-139. Plaintiff appeared with counsel and testified before an ALJ at an administrative hearing on November 30, 2009. Tr. 41-72. The ALJ issued a decision on January 13, 2010, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 98-104. On March 18, 2011, the Appeals Council granted review and remanded the case to the ALJ for further consideration of: (1) a treating physician's opinion; (2) Plaintiff's maximum residual functional capacity ("RFC"); (3) whether Plaintiff is capable of performing his past relevant work; and (4) to obtain evidence from a vocational expert if warranted. Tr. 110-111. On December 14, 2011, Plaintiff appeared with counsel and testified before an ALJ at a supplemental administrative hearing. Tr. 73-90. The ALJ issued a decision on January 26, 2012, finding Plaintiff not disabled within the meaning of the Social Security Act. Tr. 27-35. This decision became the Commissioner's final decision when the Appeals Council denied review. Tr. 1-3. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (Doc. 1)

## II.   The Record on Appeal

### a.   Plaintiff's Background and Statements in the Record

Plaintiff was 53 years of age on the December 13, 2006 alleged disability onset date, and 56 years of age on his date late insured, September 30, 2009. Tr. 28, 240. Plaintiff, a veteran with a high school equivalency degree and one or two years of college, worked in the recent past as a carpet cleaner, day laborer, electrical helper, and telemarketer. Tr. 44, 62, 246, 250.

Plaintiff testified at a hearing before the ALJ on November 30, 2009 that activities such as sitting or standing cause sharp, shooting pain in his lower back extending in his

1    legs down to the knees. Tr. 48. Plaintiff can stand for about 40 or 50 minutes before
2    needing to sit or lie down. Tr. 48-49. Plaintiff can also sit for about 40 or 50 minutes
3    before needing to walk or move around for 20 or 30 minutes before he can sit again. Tr.
4    49. Methadone, the only treatment he has been prescribed for his back pain, provides
5    temporary relief but causes nausea if he doesn't eat enough, and occasional headaches.
6    Tr. 50-51. Plaintiff does things around the house like cleaning the kitchen, sweeping
7    floors, laundry, dusting, and taking the trash out, but takes breaks during that time. Tr.
8    56-57. Plaintiff had worked recently as a scorer at a skeet shooting tournament[1], but was
9    able to alternate between sitting and standing. Tr. 59-60. Plaintiff did not think he could
10   do the job on a full-time basis because of his tendonitis and consistent pain in his back.
11   *Id.* Plaintiff also worked as a day-laborer as part of a clean-up crew on construction jobs
12   but would get in trouble for sitting down on the job, and was fired one time for this but
13   continued to work as a day-laborer at another construction site. Tr. 60. In June 2008 he
14   was able to stay on one construction cleanup job for six weeks until it ended. Tr. 47.
15   Plaintiff has no problems as a result of his human immunodeficiency virus ("HIV")
16   infection.

17         The ALJ reviewed Plaintiff's earning statements with him during the hearing, and
18   Plaintiff agreed that in 1996 he worked a full-time job the entire year as a telemarketer.
19   Tr. 65-66. He stopped working because "the company went belly up." Tr. 66. In 1998
20   Plaintiff worked again as a telemarketer for three months, then the "company went
21   down." Tr. 67. He worked as a telemarketer again in 1999 but that job ended because the
22   call lists were repetitive and it "just didn't work out with it." Tr. 67-68.

23         Plaintiff testified he would have a hard time with telemarketing now because he
24   would have a "hard time sitting and standing" that he would "just have to go lay down"
25   and there was no place to lie down and stretch his back out. Tr. 68-69.

26   ─────────────────

27   [1] Plaintiff testified at his supplemental hearing that he works these skeet
28   tournaments for six to eight hours a day for seven days at a time, about three times per
     year. Tr. 77, 80.

Plaintiff testified at the supplemental hearing before the ALJ on December 30, 2011, that the pain in his back comes and goes, but is mainly there. Tr. 81. When asked what makes it better, Plaintiff stated "just standing and sitting a lot. Standing and then laying down on my back and then standing again, but its - - I have to rotate." *Id.* He lies down about three times a day for 20 to 45 minutes. *Id.* Plaintiff stated that he was told that physical therapy wouldn't work, and surgery has not been mentioned. Tr. 82.

A vocational expert (VE) testified that Plaintiff's past relevant work as a telemarketer is sedentary and semi-skilled. *Id.* The VE testified that a hypothetical individual would be able to perform Plaintiff's past relevant work as a telemarketer when the ALJ posed the following hypothetical limitations: sedentary work with standing, walking or sitting for a total of six-hours in an eight-hour day, can frequently climb ramps or stairs, balance, stoop, kneel, crouch; can occasionally climb ladders, ropes, scaffolds, and crawl; and should not be exposed to concentrated levels of fumes, odors, gases, unprotected heights, or hazardous, moving machinery.  Tr. 86-87.

The VE testified that the ability to do even sedentary work would be eliminated if a person could only sit for less than six hours in an eight hour day or if the person had to lie down for 20 to 45 minutes three times during a workday. Tr. 87-88.

b.  Relevant Medical Evidence Before the ALJ[2]

i.  *Treating Sources*

There are few treatment notes in the record regarding Plaintiff's back pain. The records from the Veteran's Administration ("VA") indicate that Plaintiff was diagnosed

---

[2] The medical evidence demonstrates, in addition to Plaintiff's chronic back pain at issue in this appeal, that Plaintiff is HIV positive, asymptomatic; was treated for pulmonary emboli secondary to deep vein thrombosis in June 2007, resolved; underwent left lower leg extremity varicose vein ligation and stripping in October 2009; was diagnosed with adhesive capsulitis of his left shoulder, resolved; was Hepatitis C positive, resolved; and had some hearing loss. *See* Tr. 30-31. The ALJ found these impairments not severe, and that there was no evidence that these conditions have resulted in significant durational exertional or nonexertional limitations, and that any minor limitations associated with these conditions have been considered in the RFC. Tr. 30. Because Plaintiff does not argue that this finding was in error or not supported by substantial evidence in the record, the Court does not address these impairments.

in August, 2004, by Registered Nurse Elizabeth Graham, with "Chronic Low Back Pain by report of patient s/p [status post] MVA [motor vehicle accident] and HNP [herniated disc or herniated nucleus pulposus]." Tr. 467, 896. Plaintiff's treating physician Dr. Neil Ampel, a staff physician in Infectious Diseases at the Southern Arizona VA Health Care System prescribed methadone to treat the pain, (Tr. 1046) and Plaintiff continued on the same medication and dosage for treatment of his pain throughout the period in question and continuing to the time of the ALJ's decision. *See generally* Tr. 396, 460, 465, 467, 469, 477, 474, 482, 836, 906-912, 1042-1045.

In April 2005, MRI of Plaintiff's thoracic spine revealed several abnormalities, including mild to moderate multi-level degenerative disk changes throughout the thoracic spine; the findings were most significant at the T9-10 and T10-11 levels where moderate-to-severe spinal canal stenosis was noted due to the presence of posterior disk-osteophyte-complexes. Tr. 382. There was no evidence for cord compression and no significant neural foraminal stenosis. *Id.*

The MRI of Plaintiff's lumbar spine revealed no spinal canal stenosis or neural foraminal narrowing at the L2-3 level. At the L1-2 and L3-4 levels the MRI revealed multi-level degenerative disk changes without significant spinal canal stenosis and with mild bilateral neural foraminal narrowing. Tr. 382-83. At the L4-5 level the MRI demonstrated severe disk dessication with near-complete disk collapse, resulting in mild spinal canal stenosis with moderate to severe right and moderate left neural foraminal stenosis. Tr. 383. At L5-S1 the MRI demonstrated moderate-to-severe disk dessication with moderate-to-severe loss of disk height resulting in mild-to-moderate spinal canal stenosis, and, in conjunction with mild facet arthropathy, moderate right and mild-to-moderate left neural foraminal stenosis. Tr. 382.

The record summary indicates that in August 2005 and February 2006, Plaintiff again saw Dr. Ampel and was diagnosed with lumbago and chronic low back pain. Tr. 457, 459. The Court was unable to find the treatment notes from these visits in the MER.

1         Plaintiff was seen by Dr. Chris S. Reust, a staff physician at the Immunodeficiency

2    Clinic at the Phoenix VA Medical Center, on July 18 2007 for follow up with treatment

3    for HIV after returning to Phoenix after several years' absence. Tr. 408. Aside from a

4    health summary report indicating that Dr. Reust treated Plaintiff once in 1999 (Tr. 405),

5    there are no other treatment notes from Dr. Reust in the MER. In August 2007, Dr. Reust

6    completed a physician statement indicating that, among other limitations, Plaintiff could

7    only stand/walk for 2-4 hours and sit less than six hours, and noted that Plaintiff reported

8    "he must change positions about every 30 minutes." Tr. 257-56. Dr. Reust indicated that

9    the objective findings on which the limitations were based was a CT of the thorax, with

10   an anterior mediastinal mass, and a right lower lobe pulmonary embolism. Tr. 258. Dr.

11   Reust did not indicate that he had reviewed the 2005 MRI at that time.

12        A second physician statement was submitted in 2008[3], indicating that Dr. Reust

13   had reviewed the 2005 MRI and that Plaintiff had multilevel degenerative disk disease

14   and, among other limitations, could only sit for a total of less than 6 hours in an 8 hour

15   work day, "one hour at a time" and must alternate sitting and standing about once each

16   hour due to symptoms.  Tr. 751-53.

17        In April 2008, Plaintiff reported to Vipul Singh, M.D., a staff physician at the VA,

18   that he felt fine, but that "back pain is the main issue for a long time." Tr. 705. Dr. Singh

19   examined Plaintiff and noted "very tight erector spinae muscle on both sides" and

20   recommended a physical therapy consult. Tr. 706. There is no evidence in the record of

21   Plaintiff receiving any physical therapy at this time.

22        The record indicates that Plaintiff expressed an interest in reducing or

23   discontinuing his methadone prescription in September 2009 (Tr. 803, 806, 808), but

24   ultimately did not do so and was a "no-show" for a physical therapy appointment which

25

26   _____

27       [3] The report is undated, but per the Plaintiff's prior counsel it was authored in

28   2008 and that date was accepted by the ALJ in her 2010 decision after she noted it was
     based on the 2005 MRI. Tr. 33.

had been scheduled in order to give Plaintiff "some therapeutic advantages from therapy prior to titrating off methadone" (Tr. 807, 854-55, 1042).

In February 2010, Geoffrey Smith, M.D., an Infectious Disease Fellow at the Southern Arizona VA HCS noted that Plaintiff reported his back pain was controlled on current medications. Tr. 974. On examination, Dr. Smith reported a normal gait. *Id.*

In October 2011 Plaintiff was assessed at the VA by Registered Kinesiotherapist ("RKT") James Nance with "radicular symptoms to LLE [lower left extremity] and abnormal MRI findings". Tr. 921-22. Mr. Nance recommended a neurosurgical consult to determine if traction would be safe for Plaintiff. Tr. 923. In November 2011, Plaintiff was seen by Mr. Nance for "lumbar radiculopathy" indicating to the therapist that he was "going for a disability claim on my back." Tr. 919-20.

*ii. Non-Examining Sources*

In July 2008, Dr. Maloney completed a Physical RFC Assessment, indicating that Plaintiff could stand and/or walk 6 hours in an 8-hour work day and sit with normal breaks for a total of about 6 hours in an 8-hour work day. Tr. 756-63. Dr. Maloney explained that this conclusion was based on Plaintiff's chronic pain for which he is treated with methadone. *See id.*

c.  The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2009. Tr. 28, 29 ¶ 1. The ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of June 14, 2007. Tr. 29 ¶ 2. The ALJ found that Plaintiff has the severe impairments of back pain secondary to degenerative disc disease. Tr. 30 ¶ 3. The ALJ found that Plaintiff's impairments did not meet or equal any of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. Tr. 31 ¶ 4. The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform sedentary work and "he can stand, walk or sit for a total of 6 hours in each 8-hour workday; frequently climb ramps or stairs, balance, stoop, kneel and crouch; occasionally climb ladders, ropes or scaffolds and crawl; he should not

1   be exposed to concentrated levels of fumes, odors, gases, unprotected heights or
2   hazardous moving machinery. Tr. 31-32 ¶ 5.  The ALJ found that Plaintiff is capable of
3   performing his past relevant work as a telemarketer as that job is actually and generally
4   performed, and concluded that Plaintiff was not under a disability from October 1, 2006
5   through the date of the ALJ's decision. Tr. 34 ¶¶ 6, 7.

6          **III.    Discussion**

7                   a.  Standard of Review

8          The Court has the "power to enter, upon the pleadings and transcript of the record,
9   a judgment affirming, modifying, or reversing the decision of the Commissioner of Social
10  Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The
11  Commissioner's decision to deny benefits "should be upheld unless it is based on legal
12  error or is not supported by substantial evidence*." Ryan v. Comm'r of Soc. Sec.*, 528 F.3d
13  1194, 1198 (9th Cir. 2008). " 'Substantial evidence' means more than a mere scintilla, but
14  less than a preponderance; it is such relevant evidence as a reasonable person might
15  accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035
16  (9th Cir. 2007) (citing *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir.
17  2006)). In determining whether the decision is supported by substantial evidence, the
18  Court "must consider the entire record as a whole and may not affirm simply by isolating
19  a 'specific quantum of supporting evidence.'" *Id*. (quoting *Robbins,* 466 F.3d at 882). The
20  Court reviews only the reasons provided by the ALJ in the disability determination and
21  may not affirm the ALJ on a ground upon which he did not rely. *Garrison v. Colvin*, 759
22  F.3d 995, 1010 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.
23  2003)).

24         Whether a claimant is disabled is determined using a five-step evaluation process.
25  To establish disability, the claimant must show (1) he has not worked since the alleged
26  disability onset date, (2) he has a severe impairment, and (3) his impairment meets or
27  equals a listed impairment or (4) his RFC precludes him from performing his past work.

28

At step five, the Commissioner must show that the claimant is able to perform other work. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

   b.  Analysis

> i.  *The ALJ provided legally sufficient reasons to give limited weight to Dr. Reust's opinion, and thus the Court does not credit Dr. Reust's opinion as true.*

In weighing medical source evidence, the Ninth Circuit distinguishes between three types of physicians: (1) treating physicians, who treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *See Garrison*, 759 F.3d at 1011–12 (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). Generally, more weight is given to a treating physician's opinion. *Id*. The ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or an examining physician's uncontradicted opinion. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may reject the controverted opinion of a treating or an examining physician by providing specific and legitimate reasons that are supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Reddick*, 157 F.3d at 725.

Opinions from non-examining medical sources are entitled to less weight than treating or examining physicians. *Lester*, 81 F.3d at 831. Although an ALJ generally gives more weight to an examining physician's opinion than to a non-examining physician's opinion, a non-examining physician's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). When evaluating medical opinion evidence, the ALJ may consider "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion...." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

1    Plaintiff argues that the ALJ's RFC determination is not supported by substantial
2    evidence because, in making the RFC determination, the ALJ erred by giving limited
3    weight to Dr. Reust's opinion. (Doc. 21 at 14-15) Plaintiff argues that Dr. Reust's opinion
4    was consistent with the MRI and Plaintiff's consistent complaints of chronic back pain
5    and with the prescription of methadone for treatment of that chronic back pain. (Doc. 21
6    at 14-15.) Plaintiff further argues that the ALJ erred by relying on the opinion of the non-
7    examining medical expert. (Doc. 21 at 16.)

8    The MER indicates that Dr. Reust examined Plaintiff twice, once in 1999 and
9    again in 2007, though there is no indication Plaintiff sought or received treatment for his
10   back pain from Dr. Reust. Tr. 405, 408. Dr. Reust completed an assessment in 2008,
11   opining, among other limitations, that Plaintiff had the ability to sit for less than 6 hours
12   in an 8-hour workday, one hour at a time. Tr. 751.

13   The ALJ gave this opinion "limited weight" because it was "too restrictive based
14   on objective evidence" and that the VA progress notes establish that Plaintiff "has
15   received little treatment for his back pain" and "was prescribed methadone for chronic
16   pain for years prior to the alleged onset date and only conservative treatment has been
17   provided since that time." Tr. 33-34.

18   Before assigning weight to Dr. Reust's opinion, the ALJ discussed the medical
19   record and noted that aside from the MRI in 2005, no further imaging was done until
20   2011, there was no intensification of treatment consistent with disabling back pain, and in
21   2010 Plaintiff described his back pain as controlled on his current medication. Tr. 33. The
22   ALJ provided sufficient reasons that are supported by substantial evidence in support of
23   her assessment of Dr. Reust's opinion. Though this discussion of the medical record did
24   not appear in the ALJ's discussion of Dr. Reust's opinion, it is sufficient to support the
25   ALJ's weighing of Dr. Reust's opinion. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir.
26   2001) (an ALJ must discuss and evaluate the evidence that supports findings, but need
27   not do so under a particular heading).

28

The ALJ noted in her decision that Plaintiff received little treatment for his back pain, although he had been prescribed methadone for years prior to the alleged onset date. Tr. 33-34. As correctly noted by the Commissioner, the providers who examined Plaintiff all primarily treated him for conditions other than his back disorder, including his HIV, which was essentially asymptomatic, with a good diet/appetite, a stable weight, and good tolerance of medications (Tr. 408, 427, 705, 770, 799, 808-809, 820, 823, 832, 836, 918, 924, 928-929, 933, 953, 974-975); his June 2007 pulmonary embolism, which was successfully treated, with unlabored respiration and a blood oxygen level of 99% on room air, by July 2, 2007 (Tr. 421), and which Dr. Singh determined to be stable by April 2008 (Tr. 706); and a shoulder complaint, which Plaintiff testified was improved with treatment including exercise (Tr. 60-61). None, however, including Dr. Ampel, who prescribed methadone for Plaintiff's back pain and eventually ordered a lumbar spine MRI in 2011, made any objective findings regarding Plaintiff's back functioning, with the exception of Dr. Smith, also treating Plaintiff for HIV, who noted a normal gait (Tr. 974), and a non-physician provider who likewise noted that Plaintiff was able to ambulate without difficulty (Tr. 503). Plaintiff was diagnosed with chronic low back pain, in August 2004, by a registered nurse based on his own report of symptoms. Tr. 467, 896. Since that diagnosis, the only medical evidence in the record that Plaintiff sought further treatment for his back pain during the period at issue is found in a summary of the record which indicates that in August 2005 and February 2006, Plaintiff again saw Dr. Ampel and was diagnosed with lumbago and chronic low back pain. Tr. 457, 459. It was not until July 2011 that Plaintiff complained again of persistent low back pain during an appointment for follow-up treatment for HIV. Tr. 933.

An ALJ may discredit treating physicians' opinions that are unsupported by rationale or treatment notes, and offer no objective medical findings to support the existence of a claimant's conditions. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, the ALJ found this to be true for Dr. Reust's opinion. The Court finds that, because the ALJ's decision giving limited weight to Dr. Reust's opinion is

supported by specific and legitimate reasons that are supported by substantial evidence in the record, the ALJ did not err in giving limited weight to Dr. Reust's opinion . *See id*; *Lester*, 81 F.3d at 830.

           *ii.   The ALJ's credibility finding is supported by substantial evidence.*

"[Q]uestions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) (internal quotation marks and citation omitted); *see also Allen v. Heckler*, 749 F.2d 577, 580 n.1 (9th Cir. 1985).

When assessing a claimant's credibility, the "ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment." *Orn,* 495 F.3d at 635 (internal quotation marks and citation omitted). Additionally, the ALJ may disregard self-serving statements if they are unsupported by objective evidence. *Rashad v. Sullivan*, 903 F.2d 1229, 1231. Where, as here, the claimant has produced objective medical evidence of an underlying impairment that could reasonably give rise to the symptoms and there is no affirmative finding of malingering by the ALJ, the ALJ's reasons for rejecting the claimant's symptom testimony must be specific, clear and convincing. *Garrison,* 759 F.3d at 1014-15; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Orn,* 495 F.3d at 635*; Robbins,* 466 F.3d at 883. "The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Orn,* 495 F.3d at 635 (the ALJ must provide specific and cogent reasons for the disbelief and cite the reasons why the testimony is unpersuasive).

In assessing the claimant's credibility, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements about the symptoms, and other testimony from the claimant that appears less than candid; unexplained or inadequately explained failure to seek or follow a prescribed course of treatment; the claimant's daily activities; the claimant's work record;

observations of treating and examining physicians and other third parties; precipitating and aggravating factors; and functional restrictions caused by the symptoms. *Lingenfelter*, 504 F.3d at 1040; *Smolen,* 80 F.3d at 1284. *See also Robbins,* 466 F.3d at 884 ("To find the claimant not credible, the ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), on conflicts between his testimony and his own conduct; or on internal contradictions in that testimony.")

An ALJ's error may be harmless where the ALJ has provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record. *See Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1227 (9th Cir. 2009); *Carmickle v. Comm'r Social Sec. Admin*, 533 F.3d 1155, 1162–63 (9th Cir. 2008); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004). In this context, an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error "does not negate the validity of the ALJ's ultimate conclusion." *Batson*, 359 F.3d at 1197; *see also Carmickle*, 533 F.3d at 1162.

The ALJ found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Tr. 32. As the Seventh Circuit Court of Appeals explains, the manner in which this "boilerplate language" is used in the Commissioner's credibility analysis "gets things backwards." *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012) (Addressing identical language and finding that the "problem is that the assessment of a claimant's ability to work will often … depend heavily on the credibility of her statements concerning the 'intensity, persistence and limiting effects' of her symptoms, but the passage implies that ability to work is determined first and is then used to determine the claimant's credibility.")  As the Court found in *Bjornson*, the statement by the ALJ that Plaintiff's statements were "not entirely credible" yields no clue to what weight the ALJ gave that testimony, and "fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible." *Id*. (citations omitted).

If, however, "the ALJ has made specific findings justifying a decision to disbelieve an allegation … and those findings are supported by substantial evidence in the record, our role is not to second-guess that decision." *Morgan v.  Comm. of Soc. Sec. Admin*, 169 F.3d 595, 600 (9th Cir. 1999). Thus, the mere use of the meaningless boilerplate language is not cause for remand if the ALJ's conclusion is followed by sufficient reasoning. *See e.g. Jones v. Comm. of Soc. Sec. Admin.*, 2012 WL 6184941, at * 4 (D.Or. 2012)(boilerplate language is a conclusion which may be affirmed if the ALJ's stated reasons for rejecting the plaintiff's testimony are clear and convincing); *Bowers v. Astrue*, 2012 WL 2401642, at *9 (D.Or. 2012)(concluding that this language erroneously reverses the analysis, but finding such error harmless because the ALJ cited other clear and convincing reasons for rejecting the claimant's testimony). Accordingly, despite the use of the boilerplate language which implies improper analysis, the Court considers whether the ALJ's conclusion in this case is nonetheless supported by clear and convincing evidence. The Court concludes that it is.

The ALJ identified the testimony of the Plaintiff's that he was considering, stating that the Plaintiff testified that after a skeet shooting tournament he is "very sore" and "has to lay down a lot." Tr. 32 "It takes a couple of week[s] for him to get back to his normal state after working. He described a sharp pain in his back that comes and goes, but he is mainly in pain. He generally lays down three times a day. He has been told his back condition has gotten worse. Surgery has not been mentioned by his providers. He was told physical therapy would not work for him." *Id.* The ALJ found Plaintiff's testimony not credible for numerous reasons: Plaintiff continued to work after he alleges he became disabled in June 2007; there has been no intensification of treatment consistent with disabling back pain; Plaintiff reported feeling well overall in 2010 and at that time reported that his back pain was controlled on current medication; there is no evidence that Plaintiff has been provided any medication for his complaint other than methadone and naproxen; there is no evidence that Plaintiff underwent regular treatment employing a regimen or therapy consistent with the severity of his back pain complaints; and Plaintiff

had no physical therapy for his complaints until 2011.   Tr. 33. Additionally, the ALJ found that there is no record of diffuse atrophy or muscle wasting, a "common side effect of prolonged pain." Tr. 33.

Regarding the latter rationale, the ALJ cited no medical opinion or authority to support her lay surmise about the significance of the absence in the record of findings of diffuse atrophy or muscle wasting. *See* Tr. 33. "[W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him." *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2nd Cir. 1983); *see also Tackett v. Apfel*, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (ALJ improperly relied on his interpretation of Plaintiff's testimony over medical opinions); *Gonzalez Perez v. Sec'y of Health & Human Servs.*, 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not substitute his own layman's opinion for the findings and opinion of a physician...."). The ALJ's finding in this case regarding muscle atrophy and weight loss was based on the ALJ's own lay interpretation of Plaintiff's treatment records, and undoubtedly a medical diagnosis by a lay witness does not constitute competent evidence. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984)); *see also Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) ("It would appear from this paragraph that the ALJ made his own medical conclusions about whether a patient would show signs of atrophy or muscle tone loss as a result of Frank's alleged impairments"); *but see Hollis v. Bowen*, 837 F.2d 1378, 1384 (9th Cir. 1988) (recognizing that the absence of objective factors indicating the existence of severe pain – such as muscular atrophy – can support an ALJ's credibility determination). While the Court finds the ALJ's reliance on this factor to be in error, "[s]o long as there remains 'substantial evidence supporting the ALJ's conclusions on … credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (citing *Batson,* 359 F.3d at 1195–97). The

relevant inquiry in this context is whether the ALJ's decision remains legally valid, despite such error, *i.e.* whether the ALJ's remaining reasoning and ultimate credibility determination is adequately supported by substantial evidence in the record. *Id*. The Court concludes that this error was harmless because the ALJ provided specific, clear and convincing reasons, supported by substantial evidence in the record, for justifying the ALJ's decision to disbelieve Plaintiff's allegations.

First, the ALJ found that Plaintiff continued to work after the date he alleges he became disabled. Tr. 32-33. Plaintiff engaged in work activity during the periods at issue, performing light day labor work such as sweeping, inventory, and telephone answering, though this work was performed intermittently and with effort. Tr. 45-47, 59-60, 62, 284, 292. Contrary to Plaintiff's assertion that the ALJ erred in relying upon this fact because such did not constitute substantial gainful activity, as noted by the Commissioner, daily activities still "may be grounds for discrediting the claimant's testimony to the extent that they contradict the claims of a totally debilitating impairment." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (emphasis added, citations and internal punctuation omitted). The ALJ appropriately considers a claimant's work record in weighing a claimant's credibility. *See Smolen*, 80 F.3d at 1284.  Here, even if Plaintiff's work activity did not constitute substantial gainful activity, the ALJ cited Plaintiff's work activity as evidence that Plaintiff's ability to work was inconsistent with his allegations of disability after June 2007.

Second, the ALJ noted that there has been no intensification of treatment consistent with disabling back pain. Tr. 33. In fact, until Plaintiff sought care for his back pain in 2011, the only evidence of treatment for his back pain after his alleged date of disability is his continued prescription for methadone. Though he sought to discontinue his methadone treatment, he did not attend a physical therapy appointment in September 2009 which had been scheduled in order to give Plaintiff "some therapeutic advantages from therapy prior to titrating off methadone." Tr. 807, 854-55.  "[I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed

1   treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint
2   unjustified or exaggerated." *Orn*, 495 F.3d at 638 (citing *Fair*, 885 F.2d at 603). In this
3   case, the ALJ properly inferred, from Plaintiff's failure to seek more aggressive
4   treatment, that his pain was not as disabling as reported.  Additionally, the ALJ noted that
5   Plaintiff reported feeling well overall in 2010, and at that time reported that his back pain
6   was controlled on current medication. Tr. 33. Evidence that a disabling problem is
7   controlled by medication may undermine claims that the problem is disabling and support
8   an ALJ's adverse credibility finding. *See Tommasetti*, 533 F.3d at 1040.

9       The Commissioner asserts that the ALJ's credibility determination is also
10  supported by evidence of the daily activities in which Plaintiff engaged and his ability to
11  care for his own needs and perform household tasks. See (Doc. 28 at 22). The Court does
12  not consider these factors, however, as the Court reviews only the reasons provided by
13  the ALJ in the disability determination and may not affirm the ALJ on a ground upon
14  which he did not rely. *See Orn*, 495 F.3d at 630 (citing *Connett*, 340 F.3d at 874); *Pinto*
15  *v. Massanari*, 249 F.3d 840, 847-48 (9th Cir. 2001) (the district court may not affirm the
16  ALJ's decision "on a ground that the [ALJ] did not invoke in making [her] decision[.]");
17  *Accord Varney v. Sec'y Health & Human Serv. (Varney II)*, 859 F.2d 1396, 1399 (9th Cir.
18  1988) ("there may exist valid grounds on which to discredit a claimant's pain testimony....
19  But if grounds for such a finding exist, it is both reasonable and desirable to require the
20  ALJ to articulate them in the original decision.") (internal quotes and citation omitted).
21  Nonetheless, the ALJ's articulated reasons for discounting Plaintiff's testimony are
22  specific, clear and convincing, and supported by substantial evidence in the record.

23              *iii.    The ALJ properly determined that Plaintiff could*
24                      *perform his past relevant work.*

25      Plaintiff contends that his job as a telemarketer did not constitute substantial
26  gainful activity, and thus could not constitute past relevant work. (Doc. 21 at 22.)
27  Plaintiff argument is without merit, however, as Plaintiff fails to consider Plaintiff's
28  employment as a telemarketer in 1996. The ALJ obtained vocational expert testimony in

this instance to establish the requirements of Plaintiff's past relevant work and to determine whether he had sustained his burden of establishing that he was unable to perform such work with his limitations. The vocational expert relied upon the DOT in testifying that Plaintiff's past relevant work as a telemarketer, as typically performed in the national economy, was sedentary work (Tr. 86). She also testified that an individual with the RFC found by the ALJ in this case could perform that job (Tr. 86-87).

Work that a claimant performed within the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity, is considered past relevant work. *See* 20 C.F.R. §§ 404.1565(a), 416.965(a). The Commissioner's regulations provide evaluation guides for determining whether an individual is performing work at the level of substantial gainful activity. *See id.* §§ 404.1574, 416.974 (2013). An individual's earnings from work activities in excess of certain specified monthly amounts is ordinarily deemed to show that an individual engaged in substantial gainful activity; earnings less than a certain amount will ordinarily show that an individual did not engage in substantial gainful activity. *See id.* §§ 404.1574(a)(1), (b)(2)- (3), 416.974(a)(1), (b)(2)-(3); S.S.R. 83-33, 1983 WL 31255, *2; Program Operations Manual System DI 10501.015, (2001 WL 1931773). Earnings averaging more than $500.00 per month in 1996 ordinarily indicate substantial gainful activity. *See* 20 C.F.R. §§ 404.1574(b)(2)(i), 416.974(b)(2)(i). Plaintiff testified, and the record establishes, that he earned almost $15,000.00 in 1996 as telemarketer (Tr. 65, 217), well above the amount indicating substantial gainful activity. Thus, the ALJ properly found that the residual functional capacity Plaintiff retained was consistent with the demands of his past relevant work, and that Plaintiff could perform that work. *See id*. §§ 404.1520(e), 416.920(e).

The court finds the final decision of the Commissioner is supported by substantial evidence in the record and is free from prejudicial legal error.

Accordingly,

IT IS ORDERED:

1.      The Commissioner's decision denying benefits is AFFIRMED.

2.      The Clerk is directed to enter judgment accordingly.

        Dated this 1st day of December, 2014.

_____

Bernardo P. Velasco
United States Magistrate Judge